UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
Urbana Division

| | |
|---|---|
| DEBORAH NUZZI, THOMAS NUZZI, ) <br> DIANE LYNN HURST, and ) <br> JAYNE RAEF, ) <br> ) <br>      Plaintiffs, ) <br>  v. ) <br> ) <br> LOAN NGUYEN, et al., ) <br> ) <br>      Defendants. ) | Case No. 07-2238 |

# ORDER

  In December 2007, Plaintiffs, Deborah Nuzzi, Thomas Nuzzi, Diane Lynne Hurst, and Jayne Raef, filed a Complaint (#1) against Defendants, Loan Nguyen, Michelle Francis, and Brad Cosgrove, alleging violations of federal and state law.  Federal jurisdiction is based on federal question pursuant to 28 U.S.C. § 1331.  The parties have consented to the exercise of jurisdiction by a United States Magistrate Judge.

  In February 2009, Defendant Cosgrove filed a Motion for Summary Judgment (#45).  In March 2009, Plaintiffs filed a Response to Motion for Summary Judgment of Defendant Brad Cosgrove (#53).  Defendant subsequently filed a Reply to Response to Motion for Summary Judgment of Defendant Brad Cosgrove (#56).  After reviewing the parties' pleadings and memoranda and the evidence presented, this Court **GRANTS** Defendant's Motion for Summary Judgment **(#45)**.

## I. Background
### A. Factual Background

  The following facts are undisputed.  At relevant times, Plaintiffs Deborah Nuzzi and Thomas Nuzzi held the positions of principal and superintendent, respectively, in the St. George School District.  Plaintiff Raef was Thomas' administrative assistant.  Plaintiff Hurst worked as a secretary to the school staff, including Deborah.  Defendant Nguyen worked as the bookkeeper for the School District from September 2004 to February 2007 and as office

financial manager from December 1, 2008, to the present. (Defendant's Undisputed Facts (#46) (hereinafter "DUF") ¶ 27.) Defendant Francis, who is Nguyen's daughter, formerly worked for the St. George School District as secretary to the superintendent and to the School Board. (DUF ¶¶ 28-29.) Defendant Cosgrove is an officer with the Illinois State Police.

In February 2007, the Federal Bureau of Investigation (hereinafter "FBI") contacted the Illinois State Police regarding a complaint made by Loan Nguyen and Michelle Francis that Thomas and Deborah Nuzzi were misappropriating School District funds by inappropriately increasing the salary of Deborah Nuzzi and seeking duplicate reimbursement for certain expenses. (DUF ¶¶ 7-8.) Defendant Cosgrove was assigned to investigate this case in conjunction with the FBI to determine whether any criminal activity had occurred. (DUF ¶ 9.) Beginning in February 2007, Defendant worked with FBI agents Kathleen Adams and Steven Evans to investigate Deborah and Thomas Nuzzi's alleged illegal activities. During the investigation, they interviewed School Board members, former School Board members, former staff, the former director of transportation, and the former principal. (DUF ¶¶ 10-11; Plaintiffs' Additional Facts (#55) (hereinafter "PAF") ¶¶ 49-50.) Defendant did not tell Plaintiffs that they were being investigated. (PAF ¶ 76.)

On March 28, 2007, FBI agents Steven Evans and Jerry Kuemmerle and Defendant Cosgrove interviewed Marcie Kolberg, a bookkeeper and former auditor for the School District. (Kolberg interview notes, #54-8, pp. 5-14.) Kolberg told them that Loan Nguyen was incompetent and that she did not see any impropriety with the management of the School District's finances. (#54-8, pp. 6, 8.) She stated that the issues with finances stemmed from Nguyen's incompetence. (#54-8, p. 8).

In April 2007, Deborah and Thomas Nuzzi went to State Police headquarters to file a complaint about threats to their family safety. (PAF ¶ 74.) The threats were posted on the internet in a weblog. (PAF ¶ 79.) Thomas Nuzzi stated in his affidavit that Nguyen and Francis admitted they had transmitted messages over the internet falsely alleging that Plaintiffs engaged in corruption, misconduct, theft, embezzlement, professional misconduct, and lack of

professional ability. (T. Nuzzi aff., ¶ 22.) At State Police headquarters, FBI agent Adams and Defendant Cosgrove interviewed the Nuzzis. Adams told them several times that they could leave at any time. (Plaintiffs' response to DUF ¶ 34.) When questioning the Nuzzis, Defendant never advised them of their *Miranda* rights; he told them that they had to answer his questions in order to be able to file their complaint and he told them that they were going to leave the meeting in handcuffs. (PAF ¶¶ 75, 80.) Defendant questioned the Nuzzis about their school records concerning theft and embezzlement of school funds. (PAF ¶¶ 73-75.)

When the Nuzzis finally realized that they were the subjects of a criminal investigation, they told Defendant the names of witnesses who could establish their innocence. According to Plaintiffs, Defendant refused to interview key witnesses and he told Nuzzis that he would not explore what they were telling him. (PAF ¶ 77.) In his deposition, Defendant stated, "[w]e discussed with Board members we thought Ms. Nuzzi was being paid inappropriately. If they took that to be criminal behavior, then yes [we advised School Board members that the Nuzzis had engaged in criminal activity]." (PAF ¶ 69.)

Based on the information acquired during the investigation, Defendant Cosgrove and the FBI forwarded the case to the United States Attorney's Office and the Kankakee County State's Attorney's Office, both of which declined to prosecute any individuals at the time. (DUF ¶¶ 12-13.) No charges have been brought against any Plaintiff as a result of Defendant's investigation and no statements the Nuzzis made during their meeting with Defendant have been used against Plaintiffs in a criminal proceeding. (DUF ¶¶ 31-32.) On April 10, 2008, the Kankakee County State's Attorney sent a letter to Defendant stating that they did not plan to prosecute the Nuzzis at that time. (#46-2, p. 4.)

The St. George School Board hired a law firm to perform an independent investigation regarding the School District finances. (T. Nuzzi dep., p. 133.) In August 2007, the independent investigator gave the School Board her results, which indicated that she found the superintendent, Thomas Nuzzi, guilty of paying the principal, Deborah Nuzzi, too much money.

(T. Nuzzi dep., p. 133, stating "she found us guilty of somehow, some way the superintendent paying the principal more money and so on and so forth.")

Deborah had an annual contract with the St. George School Board. (DUF ¶ 39.) She began working as principal of the St. George Elementary School in August 2006. (DUF ¶ 26.) The Board renewed her contract for the 2007-2008 school year. (DUF ¶ 39.) She was placed on medical leave from the School District in January 2008 and her job ended on June 30, 2008. (DUF ¶ 40.) The School Board did not renew her contract for the 2008-2009 school year. (DUF ¶ 18.) The School Board's Resolution Authorizing Issuance of Notice of Non-Renewal, dated April 3, 2008, states that it intended not to renew her employment contract because her evaluation described significant deficiencies in her job performance. (#54-7, p. 13.)

The School Board placed Thomas Nuzzi on leave in January 2008. In February 2008, the St. George School Board did not renew his contract for the 2008-2009 school year. (T. Nuzzi dep., #54-4, pp. 20-21.) In July 2008, the School Board honorably discharged Raef and Hurst from their positions; the Board stated that it was due to a reduction in force. (Hurst dep., p. 7; Raef dep., p. 34.)

### B. Plaintiff's Claims

In their complaint, Plaintiffs allege that, beginning in February 2007, Defendants Nguyen and Francis transmitted messages over the internet about sexual and other activities allegedly engaged in by Plaintiffs. They also transmitted messages alleging that Plaintiffs engaged in corruption, misconduct, theft, professional misconduct, and lack of professional ability. At the time, Defendants knew that the information was untrue. Defendants also actively encouraged others to transmit over the internet this information about Plaintiffs' sexual and other unprofessional misconduct.

Plaintiffs' complaint also alleges that Defendant Cosgrove engaged in an unauthorized investigation relating to Plaintiffs Thomas and Deborah Nuzzi. In talking to various people during this investigation, Defendant made allegations that Plaintiffs were involved in illegal activity, even though he knew that Plaintiffs had not engaged in any illegal activity.

Plaintiffs' complaint alleges three counts. Count I alleges that Defendants Nguyen and Francis violated the Communications Decency Act (47 U.S.C. § 223(a)) by "making available and transmitting sexual comments, requests, suggestions, proposals, images, or other communications which are obscene and patently offensive by community standards knowing that the recipient of the communication may be under 18 years of age." (#1, ¶ 19.) Count II, against all Defendants, alleges defamation, based on Defendants' malicious and false statements, made with intent to defame Plaintiffs. Count III alleges that Defendant Cosgrove violated all Plaintiffs' rights under the Fifth Amendment to the United States Constitution when he advised Plaintiffs that they must give statements to him.

## II.  Summary Judgment Standard

The Court will grant summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). In ruling on a motion for summary judgment, the Court must decide, based on admissible evidence, whether any genuine dispute of material fact exists that requires a trial. *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). "Material facts" are those facts that under the applicable substantive law might affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over material facts is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* In determining whether a genuine issue of material fact exists, the court must consider the evidence in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

The party seeking summary judgment bears the initial burden of showing that no such issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). However, when, as here, the nonmovant is the party with the ultimate burden of proof at trial, that party retains its burden of producing evidence that would support a reasonable jury verdict. *Anderson,* 477 U.S. at 267. The nonmoving party may not rest upon mere allegations in the pleadings or upon conclusory statements in affidavits; rather, she must go beyond the pleadings and support her contentions with proper documentary evidence. *Celotex*, 477 U.S. at 322-23; FED. R. CIV. P. 56(e). A scintilla of evidence in support of the nonmovant's position is not sufficient to oppose successfully a summary judgment motion; "there must be evidence on which the jury could reasonably find for the [nonmovant]." *Anderson*, 477 U.S. at 250. The plain language of Rule 56(c) mandates the entry of summary judgment against a party who fails to establish the existence of any element essential to that party's case, and on which that party will bear the burden of proof at trial. *Id.* In such a situation there can be no genuine issue as to any material fact, because a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Id.*

### III.  Discussion

Defendant argues that the Court should grant summary judgment on the Fifth Amendment claim in Count III because (1) Defendant Cosgrove is not a federal actor and, alternatively; (2) the doctrine of qualified immunity protects Defendant from suit. Once the Court has dismissed Count III, Defendant asks the Court to decline to exercise supplemental jurisdiction over the state law defamation claim in Count II.

#### A.  Defendant Not a Federal Actor

Defendant first argues that Plaintiffs' constitutional claims fail because Defendant is not a federal actor. The Court disagrees.

The due process clause of the Fifth Amendment applies only to agents of the federal government. *Massey v. Wheeler*, 221 F.3d 1030, 1036 n.1 (7th Cir. 2000); *Johnson v. Carroll,* 694 F. Supp. 500, 504 (N.D. Ill. 1988) (citing *Bolling v. Sharpe*, 347 U.S. 497, 498-99 (1954)).

Because Defendant is not a federal employee, Plaintiffs cannot assert a claim based on the Fifth Amendment. However, the Fifth Amendment has been made applicable to the States through the Fourteenth Amendment, which applies to state and municipal employees. *Chavez v. Martinez*, 538 U.S. 760, 780 n.1 (2003) ("Our views on the proper scope of the Self-Incrimination Clause do not mean that police torture or other abuse that results in a confession is constitutionally permissible so long as the statements are not used at trial; it simply means that the Fourteenth Amendment's Due Process Clause, rather than the Fifth Amendment's Self-Incrimination Clause, would govern the inquiry and can provide relief in appropriate circumstances.") (Scalia, J., concurring). Thus, Plaintiffs can bring an identical claim against Defendant Cosgrove under the due process clause of the Fourteenth Amendment. *See Johnson*, 694 F. Supp. at 504. The Court will not dismiss Plaintiffs' constitutional claims on the basis of this pleading defect.

## B. Qualified Immunity

Alternatively, Defendant argues that the Court should grant summary judgment in his favor because he is protected by qualified immunity.

Qualified immunity shields a local official from civil liability for damages insofar as his behavior does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). A clearly established right is one which is "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). A public official is entitled to qualified immunity when he has acted in an objectively reasonable manner while performing discretionary duties. *Id.* at 649-50.

The Seventh Circuit court employs a two-part test to analyze whether a defendant should be protected by qualified immunity. To survive a qualified immunity defense, a plaintiff must show that (1) he has asserted a constitutional violation; and (2) the applicable legal standards were clearly established at the time the defendant acted. *Harrell v. Cook*, 169 F.3d 428, 431 (7th Cir. 1999). *See also* 42 U.S.C. § 1983; *McNabola v. Chi. Transit Auth.*, 10 F.3d 501, 513

(7th Cir. 1993) (to state a constitutional claim pursuant to Section 1983, a plaintiff must allege that he had a statutory or constitutional right, that he was deprived of that right, and that the defendant, acting under color of state law, intentionally deprived the plaintiff of his right). Determining what constitutes "clearly established law" requires a comparison of the specific facts of the case with the body of law that existed at the time of the alleged conduct. *Rakovich v. Wade*, 850 F.2d 1180, 1209 (7th Cir. 1988) (abrogated on other grounds, *Spiegla v. Hull*, 371 F.3d 928, 941 (7th Cir. 2004).

Defendant contends that Plaintiffs have failed on both prongs of the two-part test; they failed to state a constitutional claim in Count III, and even if they had, the applicable legal standards were not clearly established at the time of the alleged conduct. Specifically, Defendant contends that Plaintiffs have not articulated a clearly established constitutional right that Defendant violated; Defendant is entitled to summary judgment on any colorable due process claim; and Plaintiffs failed to point to a closely analogous case that would have placed Defendant on notice that his conduct was unlawful.

### 1. Whether Plaintiffs Have Established a Constitutional Claim

Plaintiffs' claim in Count III alleges that the Fifth Amendment guarantees citizens the right not to make statements to police officials and Defendant Cosgrove told Plaintiffs that they must give statements to him. If this were the only claim, the discussion would end here because Plaintiffs have admitted that, in fact, Defendant did not tell Plaintiffs that he or she must give him a statement. *See* #53, pp.7-8, responding to DUF ¶ 37. However, it appears that Plaintiffs are now asserting constitutional claims that they did not allege in their complaint. Based on the parties' memoranda, the Court construes Plaintiffs' constitutional claims as being based on (1) a *Miranda* violation; (2) a substantive due process claim based on Defendant's conduct in investigating the allegations against the Nuzzis because that conduct was constitutionally defective such that it shocked the conscience; (3) a procedural due process claim based on Plaintiffs' property interest in their continued employment; and (4) a procedural due process claim based on Plaintiffs' liberty interest in their reputations. The Court will consider each of these claims in turn to determine whether one of them constitutes a constitutional violation.

### a. *Miranda* Violation

Plaintiffs contend in their brief that "it is clear that the failure to give *Miranda* warnings violates a constitutional or statutory duty." (#53, p. 22.) Plaintiffs have cited no authority to support this premise. The Seventh Circuit has made it clear that a litigant who fails to press a point by supporting it with pertinent authority, or by showing why it is sound despite a lack of supporting authority, forfeits the point. *Doe v. Johnson,* 52 F.3d 1448, 1457 (7th Cir. 1995).

As an initial matter, the facts show that Defendant Cosgrove questioned only Plaintiffs Deborah and Thomas Nuzzi. Plaintiffs Raef and Hurst have not alleged any facts that show Defendant failed to give them a *Miranda* warning. Therefore, this claim and the following discussion apply only to Deborah and Thomas Nuzzi.

Plaintiffs' contention that Defendant Cosgrove's failure to give them any *Miranda* warnings violated the constitution is incorrect. "The *Miranda* rule is not a code of police conduct, and police do not violate the Constitution (or even the *Miranda* rule, for that matter) by mere failures to warn." *U.S. v. Patane*, 542 U.S. 630, 637 (2004). In a recent case, the Seventh Circuit court addressed this issue in its discussion of the Supreme Court's decision in *Chavez v. Martinez*, 538 U.S. 760 (2003). The court stated as follows:

> In *Chavez,* the § 1983 plaintiff Martinez had made incriminating statements while in police custody without receiving *Miranda* warnings. He never was prosecuted, but filed a § 1983 action against Chavez, the officer who had questioned him. In that action, Martinez alleged that Chavez violated his Fifth Amendment right to be free from self-incrimination as well as his Fourteenth Amendment substantive due process right to be free from coercive questioning. The Supreme Court, in a plurality opinion, held that the police officer's questioning of Martinez without *Miranda* warnings did not violate his rights under the Self-Incrimination Clause of the Fifth Amendment because his compelled statements had not been used against him in a criminal case. The plurality reasoned that *Miranda* "created prophylactic rules designed to safeguard the core constitutional right protected by the Self-Incrimination Clause," *id.* at 770, 123 S.Ct. 1994, namely that "[n]o person . . . shall be compelled *in any criminal case* to be a *witness* against himself," *id.* at 766, 123 S.Ct. 1994 (citing, with added emphasis, U.S. Const. amend. V). The phrase "criminal case," as it is employed in the Self-Incrimination Clause, requires, at

>the very least, the initiation of a legal proceeding, rather than mere police questioning, before a suspect's self-incrimination rights are implicated. *Id.* at 767, 123 S.Ct. 1994 ("Statements compelled by police interrogations of course may not be used against a defendant at trial, . . . but it is not until their use in a criminal case that a violation of the Self-Incrimination Clause occurs."). Martinez never was prosecuted. Consequently, the absence of a criminal case "in which Martinez was compelled to be a 'witness' against himself" defeated his claim for damages based on the Self-Incrimination Clause. *Id.* at 773, 123 S.Ct. 1994.

*Sornberger v. City of Knoxville, Ill.*, 434 F.3d 1006, 1023-24 (7th Cir. 2006). Thus, *Sornberger* makes it clear that a police officer's failure to give *Miranda* warnings before questioning an individual does not, by itself, implicate a constitutional right. The constitutional right against self-incrimination only arises when an individual subsequently makes an incriminating statement *and* that statement is used against the individual in a criminal case or proceeding. The *Sornberger* decision held that a "criminal case" includes arraignments, probable cause hearings, and bail hearings, as well as at trial. *Id.* at 1026-27.

Here, Plaintiffs have presented no facts showing that they made any incriminating statements or that any such statements were used against them in any criminal proceeding. Accordingly, Plaintiffs have not established that Defendant's failure to give them *Miranda* warnings violated their constitutional rights.

### b.  Substantive Due Process Claim

Plaintiffs also allege substantive due process claims based on Defendant Cosgrove's investigation of the allegations against the Nuzzis. Plaintiffs contend that Defendant's conduct was constitutionally defective such that it shocked the conscience. Plaintiffs Raef and Hurst join in this claim.

Rather than guaranteeing an individual the right to a fair decision-making procedure, the concept of substantive due process prevents the state from taking certain actions even if it provides procedural safeguards. "The nub of a substantive due process claim is that some things the state just cannot do, no matter how much process it provides." *Miller v. Henman,*

804 F.2d 421, 427 (7th Cir. 1986). Thus, the right to substantive due process protects citizens against government conduct that is arbitrary or without reasonable justification. *Tun v. Whitticker,* 398 F.3d 899, 902 (7th Cir. 2005). However, as the Supreme Court has emphasized, "only the most egregious official conduct" can be said to be arbitrary in the constitutional sense. *County of Sacramento v. Lewis,* 523 U.S. 833, 846 (1998) (holding that a police officer did not violate the substantive due process rights of a passenger who died as a result of a high speed chase). To constitute a violation of substantive due process rights, the official conduct must "shock the conscience" because it is "unjustifiable by *any* governmental interest." *Remer v. Burlington Area Sch. Dist.,* 286 F.3d 1007, 1013 (7th Cir. 2002).

Plaintiffs' brief barely mentions the substantive due process claims. In the section on the Fifth Amendment and Section 1983 principles, Plaintiffs state as follows:

> The facts in this case cry out for application under *Chavez* of civil liability on Defendant Cosgrove. Having obtained advance knowledge that there was no impropriety on the part of the Nuzzis and that it was Nguyen who cooked the books and that her improbable story was completely unreliable it was outrageous to put the screws to the Nuzzis as Cosgrove did causing the loss of all the Plaintiffs' jobs.

(#53, p. 21.)

At the summary judgment stage, the Court must accept as true the nonmovant's version of any disputed facts. *Payne v. Pauley,* 337 F.3d 767, 775 (7th Cir. 2003). However, it need not accept as true a plaintiff's *characterization* of the facts or a plaintiff's legal conclusions. Plaintiffs' description of the claim quoted above does not even inform the Court what conduct by Defendant forms the basis for Plaintiffs' substantive due process claims.

In order to determine what conduct Plaintiffs contend shocks the conscience, the Court has examined the documents in the record. Plaintiffs characterize their claims as follows: Plaintiff Raef states that she lost her job and has been unable to obtain employment because of Defendant Cosgrove's failure to thoroughly investigate the allegations Nguyen and Francis made against Plaintiffs. He "grievously failed to do his job of investigating thoroughly and

11

appropriately," "validated libelous entries on the blog," and undermined Raef's credibility by telling people that Plaintiffs were guilty of theft, lies, conspiracy, and other unbecoming behavior. (Raef aff., #54-8, p. 3.) Plaintiff Raef summarizes her claim as follows: "My natural right as an American citizen – not to be injured or abused – has been violated as the result of Cosgrove's deliberate and intentional ignoring of the facts and decision to believe without question the lies he was told by Nguyen and Francis." (Raef aff., #54-8, p. 3 (emphasis omitted).)

       Plaintiff Hurst's affidavit contains similar statements. (Hurst aff., #54-8, p. 13.)

       Plaintiff Thomas Nuzzi provides this version of Defendant's conduct:

> Because of Cosgrove's statements that we are guilty, showing people our personal information with our social security numbers, never checking out anything for fact, refusing to discuss these issues with the accountant (he finally spoke with the accountant late in April,) treasurer, and auditor, never reading us our Miranda Rights or warning us we were part of an investigation, ruining our reputation, never trying to protect us from others that were trying to harm us or damage our property, telling the County sheriff that we were guilty and we fill out false police reports thereby causing no one from their office to come out and see the damage or fill out a report, ignoring the disappearance of the $799,000 when I arrived in the district and the school quashed the investigation, and never looking into Loan Nguyen paying herself more that [sic] her agreement or finding out why she hid over $30,000 and $150,000 in another bank account, we have lost our jobs, our medical insurance, our benefits, our retirement money, and cannot live in the area because everyone feels we are guilty.

(T. Nuzzi aff., #54-4, pp. 23-24.) Thomas also stated in his affidavit that he believed that Defendant told school board members that he was guilty of stealing from the School District and, as a result, the School Board placed him on leave in January 2008.

       Plaintiff Deborah Nuzzi's affidavit includes many of the same statements. In addition, she summarizes Defendant Cosgrove's conduct as follows:

> Brad Cosgrove has ruined my career for which I prepared by working to receive a B.A., and M.A. and an Ed.D. He has taken away my credibility by telling people . . . that I am guilty of thievery, lies and other unbecoming behavior. In essence, Brad Cosgrove has participated in stealing my identity by creating an unsavory identity for me that is absolutely untrue.

(D. Nuzzi aff., #54-4, p. 10.)

Plaintiffs' statement of additional facts, based on their affidavits, contain the following additional information related to their claims. Defendant never told Plaintiffs that they were being investigated. When Deborah and Thomas Nuzzi went to State Police headquarters to file a complaint about threats to their family safety, Defendant began questioning them about their school records concerning theft and embezzlement of school funds. (PAF ¶ 73-75.) Defendant never advised them of their *Miranda* rights, he told them that they had to answer his questions in order to be able to file their complaint, and he told them that they were going to leave the meeting in handcuffs. (PAF ¶¶ 75, 80.)

Marcie Kolberg, an auditor and bookkeeper for the School District, told investigators that Loan Nguyen was incompetent and that she did not see any impropriety with the management of the School District's finances. (#54-8, pp. 6, 8.) She stated that the issues with finances stemmed from Nguyen's incompetence. (#54-8, p. 8). In his deposition, Defendant Cosgrove stated, "[w]e discussed with Board members we thought Ms. Nuzzi was being paid inappropriately. If they took that to be criminal behavior, then yes [we advised School Board members that the Nuzzis had engaged in criminal activity]." (PAF ¶ 69.)

After reviewing the evidence including Plaintiffs' accusations, the Court concludes that Plaintiffs' objections to Defendant Cosgrove's investigation primarily arise from the fact that Defendant appeared to believe the claims of Nguyen and Francis regarding the Nuzzis' alleged illegal activities and he continued to investigate even though Marcie Kolberg had told investigators that she did not see any impropriety with the management of the District's finances.

The Court has carefully reviewed the facts related to Plaintiffs' substantive due process claim. Although Plaintiffs found Defendant's investigation to be unsatisfactory, based on case law addressing substantive due process, the Court concludes that Defendant's actions in conducting the investigation clearly does not shock the conscience. Accordingly, Plaintiffs have not established that Defendant violated their constitutional rights to substantive due process.

### c. Procedural Due Process Claims

All Plaintiffs also allege claims based on "a protected property interest in their continued employment and a liberty interest in their reputations." (#53, p. 23.) Such claims implicate procedural due process rather than substantive due process. This is consistent with the cases Plaintiffs cite in their memorandum, all of which address procedural due process.

A procedural due process claim requires a two-fold analysis. First, the court must determine whether the plaintiff was deprived of a protected liberty or property interest; second, the court must determine what process is due. *See Brown v. City of Mich. City, Ind.,* 462 F.3d 720, 728 (7th Cir. 2006).

### i. Claims Based on Plaintiffs' Property Interest in Continued Employment

Plaintiffs' brief contains no discussion of procedural due process with regard to their property interests.

To have a property interest protected by the Fourteenth Amendment, "a person . . . must have more than a unilateral expectation of [the claimed interest]. He must, instead, have a legitimate claim of entitlement to it." *Bd. of Regents v. Roth,* 408 U.S. 564, 577 (1972). Property interests "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." *Id.*

Defendants point out that Plaintiffs have demonstrated no protected property interest in their jobs. The Court agrees. Plaintiffs Raef and Hurst have provided no evidence showing

14

they had a property interest in their employment. *See Harris v. City of Auburn*, 27 F.3d 1284, 1286 (7th Cir. 1994) (stating that at-will employees have no constitutionally-protected property interest in continued employment). Plaintiffs Thomas and Deborah Nuzzi have admitted that their jobs were based on annual contracts which the School Board decided not to renew. In *Upadhya v. Langenburg*, the Seventh Circuit stated that an employee "serving on a series of annual appointments, without an entitlement to renewal founded on state law, has no property interest in his position." *Upadhya v. Langenburg*, 834 F.2d 661, 664 (7th Cir. 1987) (citing *Roth*, 408 U.S. at 576-78).

Because Plaintiffs presented no evidence showing that they have a property interest in their employment, they have not established that Defendant violated their constitutional rights to procedural due process.

### ii. Claims Based on Plaintiffs' Liberty Interest

Regarding the claims based on Plaintiffs' liberty interests in their reputations, Plaintiffs' brief states that Plaintiffs were stigmatized by Defendant Cosgrove's conduct, the stigmatizing information was publicly disclosed, and Plaintiffs suffered a tangible loss of other employment opportunities as a result of public disclosure. Plaintiffs also stated that the cases cited by Defendant show that this violated Plaintiffs' rights, and then listed several other cases. The Court notes that this is the extent of Plaintiffs' discussion.

At this stage in the case, plaintiffs must set forth specific facts that demonstrate a genuine issue for trial. *See Rozskowiak v. Vill. of Arlington Heights,* 415 F.3d 608, 612 (7th Cir. 2005). The parties' statements of material fact set the stage for discussion, but the discussion must include reference to relevant facts, not just a description of the claims. Plaintiffs have not done that nor have they responded to Defendant's arguments regarding the merits of their purported liberty interest claims. It is "not the work of this Court to formulate arguments for the parties." *Kurzawa v. Jordan,* 146 F.3d 435, 447-48 (7th Cir. 1998). Plaintiffs' simple recitation of the elements for this claim, without any reference to the

15

particular evidence relevant to this case, is not sufficient to show that Defendant violated their constitutional rights to procedural due process based on liberty interests.

Summary judgment is the "put up or shut up" moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events. *Johnson v. Cambridge Indus., Inc.,* 325 F.3d 892, 901 (7th Cir. 2003). Here, Plaintiffs failed to establish that Defendant violated their constitutional rights as to the purported violations of their rights to *Miranda* warnings, substantive due process, or procedural due process based on either a property or liberty interest. Accordingly, the Court grants summary judgment in favor of Defendant as to Count III on the basis of qualified immunity.

### 2. Whether Applicable Legal Standards Were Clearly Established

Defendant also argues that Plaintiffs have failed on the second part of the qualified-immunity test; even if Plaintiffs had shown that Defendant violated their constitutional rights in Count III, Plaintiffs did not demonstrate that the applicable legal standards were clearly established at the time of the alleged conduct.

Once a defendant has raised a qualified immunity defense, the plaintiff bears the burden of demonstrating the violation of a clearly established right. *Forman v. Richmond Police Dep't*, 104 F.3d 950, 957-58 (7th Cir. 1997). To demonstrate that a right is clearly established, a plaintiff need not show that "the very action in question" was previously held unlawful or that a prior case is "on all fours" with the facts and the law in his own case. *Id*. at 958. Instead, "[c]losely analogous cases, those decided before the defendants acted or failed to act, are required to find that a constitutional right is clearly established." *Id.* (citing *Rakovich*, 850 F.2d at 1209). Determining what constitutes "clearly established law" requires a comparison of the

specific facts of the case with the body of law that existed at the time of the alleged conduct. *Rakovich v. Wade*, 850 F.2d 1180, 1209 (7th Cir. 1988).

Although Plaintiffs' memorandum cites some cases, Plaintiffs did not address this argument. As a result, Plaintiffs have failed to satisfy their burden of demonstrating the second prong of the qualified immunity test. This constitutes another reason for granting summary judgment in favor of Defendant as to Count III.

### C.  Defamation Claim

In their complaint, Plaintiffs also asserted state law defamation claims, apparently relying on supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) as a basis for the exercise of federal jurisdiction. As a general matter, when a plaintiff's federal law claims have been dismissed prior to trial, a federal court should relinquish jurisdiction over remaining state law claims. *Williams Elecs. Games, Inc. v. Garrity,* 479 F.3d 904, 906-07 (7th Cir. 2007). This rule, however, is subject to three exceptions: when the refiling of the state claims is barred by the statute of limitations; where substantial judicial resources have already been expended on the state claims; and when it is clearly apparent how the state claim is to be decided. *Id*. at 907 (citing *Wright v. Associated Ins. Cos. Inc.*, 29 F.3d 1244, 1252 (7th Cir. 1994)).

None of these exceptions apply here. Under 28 U.S.C. § 1367(d), the period of limitations for any claim asserted under subsection (a) "shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period.." Therefore, dismissal of the defamation claim will not preclude Plaintiffs from pursuing this matter in state court. Accordingly, the Court declines to exercise jurisdiction over the defamation claim.

### IV. Summary

For the reasons stated above, the Court **GRANTS** Defendant's Motion for Summary Judgment **(#45)** as to Count III.  The Court declines to exercise supplemental jurisdiction over the state law defamation claim in Count II.  *See* 28 U.S.C. § 1367(c)(3).  Therefore, the Court dismisses Count II as to Defendant Cosgrove without prejudice to filing in state court.  This case is terminated.

ENTER this 20th day of May, 2009.

                                          s/ DAVID G. BERNTHAL
                                          U.S. MAGISTRATE JUDGE